IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RANNORD JONES,                          :
                                        :
        Petitioner                      :
                                        :    CIVIL NO. 1:10-CV-1373
                                        :
        v.                              :    Hon. John E. Jones III
                                        :
                                        :
MARY SABOL, *et al.*,                   :
                                        :
        Respondents                     :

## MEMORANDUM

October 29, 2010

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Petitioner Rannord Jones ("Petitioner" or "Jones"), a detainee of the United States Immigration and Customs Enforcement ("ICE") Office, who is confined at the York County Correctional Facility in York, Pennsylvania, initiated this action by filing a Petition for Writ of Habeas Corpus ("Petition") pursuant to the provisions of 28 U.S.C. § 2241. Jones asserts that the charges of removability against him do not subject him to mandatory detention and therefore requests that this Court grant his Petition and direct his immediate release. (*See* Doc. 1.)

By Order dated July 9, 2010, service of the Petition was directed, and Respondents were directed to file an answer within twenty-one (21) days. (Doc. 4.)

On July 30, 2010, a Response (Doc. 6), exhibits (Doc. 6-2), and supporting authority (Doc. 6-3) were filed. Petitioner filed a reply brief (Doc. 7) on August 17, 2010. Accordingly, the Petition is fully briefed and ripe for disposition. For the reasons set forth below, the Petition will be denied.

## I.    FACTUAL BACKGROUND

Jones, a native and citizen of Jamaica, first entered the United States on September 13, 1996 as a lawful permanent resident. (Doc. 6-2 at 2[1], Ex. 1, Immigrant Visa and Alien Registration.) On December 1, 1997, Jones pled guilty in the Superior Court of the State of Delaware for conspiracy in the third degree and possession/use of a non-narcotic Schedule IV controlled substance. (*Id.* at 4-5, Ex. 2, Delaware Superior Court Criminal Docket.) Jones was sentenced on the possession/use charge to one (1) year of confinement, suspended to one (1) year of intense supervision, and on the conspiracy charge, to one (1) year of confinement, suspended to one (1) year of probation. (*Id.*; Doc. 6-2 at 7, Ex. 3, Record of Deportable/Inadmissible Alien.)

Jones subsequently returned to Jamaica. However, on December 14, 2006, he attempted to re-enter the United States at Baltimore, Maryland. (*Id.* at 11, Ex. 4, Notice to Appear.) Upon his arrival, Jones applied for admission into the United

---

[1]Citations to page numbers refer to the page number on the CM/ECF electronic record.

States as a returning lawful permanent resident. (*Id.*) However, as a result of his 1997 criminal convictions in Delaware, his inspection was deferred. (*Id.*)

On January 12, 2007, Jones reported for deferred inspection at Philadelphia. (*Id.*) At that time, he was served with a Notice to Appear before an immigration judge to show why he should not be removed from the United States. (*Id.* at 10-11.) The Notice to Appear charged Jones with removability under § 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act ("INA") as "an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." (*Id.* at 11.)

While his immigration proceedings were pending, Jones was arrested by Delaware state authorities and convicted on November 21, 2008[2] of assault in the third degree, terroristic threatening, and abuse of a sports official. (*Id.* at 16-18, Ex. 6, Delaware Superior Court Criminal Docket.) On January 9, 2009, Jones was sentenced on the assault charge to one (1) year of confinement, suspended after serving six (6) months to partial confinement for one (1) year; on the terroristic threat

---

[2]The Additional Charges of Inadmissibility/Deportability state that Jones was convicted on January 9, 2009 (*see* Doc. 6-2 at 24). However, the Delaware Superior Court docket reflects that he was convicted by a jury on November 21, 2008 and sentenced on January 9, 2009 (*see id.* at 17).

charge to one (1) year confinement, suspended to one (1) year of probation; and on the abuse charge, to one (1) year of confinement, suspended to one (1) year of probation. (*Id.* at 8, Record of Deportable/Inadmissible Alien.)

On June 10, 2009, an immigration detainer was lodged with Delaware correctional officials. (*Id.* at 21, Immigration Detainer- Notice of Action.) On June 18, 2009, a Record of Deportable/Inadmissible Alien, Warrant for Arrest of Alien, and Notice of Custody Determination were issued. (Doc. 6-2 at 6-8; Doc. 6-2 at 22, Ex. 9, Warrant for Arrest of Alien; Doc. 6-2 at 23, Ex. 10, Notice of Custody Determination.) The following day, June 19, 2009, the arrest warrant and custody determination notice were served upon Jones. (Doc. 6-2 at 22, 23.) Jones has been in ICE custody since June 19, 2009. (*Id.*)

On August 24, 2009, the Notice to Appear was amended to include the charge of removability under INA 212(a)(2)(A)(i)(I), "as an alien who has been convicted of, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude." (*Id.* at 24-25, Ex. 11, Additional Charges of Inadmissibility/Deportability.)

Subsequently, Jones sought relief from removal under INA section 212(h). (*Id.* at 26-27, Ex. 12, IJ Ruling on Eligibility.) Specifically, he sought a waiver of inadmissibility based on his argument that his Delaware conviction for terroristic

threats does not amount to a "crime of violence" aggravated felony. (*See id.*) On February 10, 2010, an Immigration Judge ("IJ") determined that Jones was ineligible for a section 212(h) waiver of inadmissibility to waive an aggravated felony conviction in light of his status as a lawful permanent resident alien. (*See id.*)

By Order dated March 8, 2010, the IJ ordered Jones removed from the United States to Jamaica. (*Id.* at 28, Ex. 13, Order of Removal.) On April 1, 2010, Jones filed an appeal from the Order of Removal to the Board of Immigration Appeals ("BIA"). (*Id.* at 29-31, Ex. 14, Copy of Notice of Appeal.) On May 4, 2010, the Department of Homeland Security ("DHS") filed a motion for summary affirmance of the decision of the IJ. (*Id.* at 32-34, Ex. 15, DHS Motion for Summary Affirmance.) On June 14, 2010, a brief in support of the appeal was filed by Jones' counsel. (*Id.* at 35-47, Ex. 16, Jones' Brief in Support of Merits Appeal.) The appeal was pending before the BIA at the time of the submission of the Response in this action on July 30, 2010. However, a check of the Immigration Court Information System, provided by the Executive Office for Immigration Review ("EOIR"), as of the date of this Memorandum reveals that, on October 27, 2010, Jones' appeal was dismissed by the BIA.

## II.    DISCUSSION

In his Petition, and in his reply brief, Jones asserts that the charges of removability against him do not constitute a basis for mandatory detention. However, 8 U.S.C. § 1226(c), which is the mandatory detention provision of the INA, provides as follows:

The Attorney General shall take into custody any alien who–

**(A)** is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

**(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

**(C)** is deportable under section 1227(a)(2)(A)(I) of this title on the basis of an offense for which the alien has been sentence [FN1] to a term of imprisonment of at least 1 year, or

**(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

8 U.S.C. § 1226(c)(1). In the instant case, Jones was charged with removability, and ultimately found to be removable, under section 1227(a)(2)(B) because he pled guilty and was convicted of a crime relating to a controlled substance in the state of Delaware on December 1, 1997 (*see* Doc. 6-2 at 4-5), and under section 1182(a)(2)(A)(i)(I) because he was convicted on November 21, 2008 of a crime involving moral turpitude, and specifically, of assault in the third degree, terroristic

6

threatening, and abuse of a sports official (*see id.* at 16-18.) Therefore, it is evident that Jones is subject to mandatory detention. *See* 8 U.S.C. § 1226(c)(1)(A) and (B).

In his reply brief, Jones attempts to dispute the fact that he is subject to mandatory detention by arguing that his 1997 drug possession charge was not included in the original Notice to Appear, and therefore, is not a valid basis to hold him in mandatory detention. (*See* Doc. 7, Reply Brief, at 1.) Contrary to Jones' assertion, the original Notice to Appear served on Jones on January 12, 2007 clearly charges him with removability under § 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act ("INA") as "an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." (Doc. 6-2 at 11.)

Jones also asserts in his reply brief that the "terroristic threats charge" should not be used to justify his detention because he claims that "it is not a clear charge because it is a new charge in the US jurisprudence and has raised a lot of questions" as to whether it is a "crime of violence." (*See* Doc. 7 at 1.) Notwithstanding the accuracy of Jones' statement, it is of no moment in these proceedings because any challenge by Jones to the characterization of the charges that formed the basis for the

7

determination that he is removable constitutes a challenge to his order of removal itself. This Court lacks jurisdiction over such a challenge because the REAL ID Act of 2005 provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision" of the Act. 8 U.S.C. § 1252(a)(5). Indeed, Jones raised this issue both in seeking a waiver of removal under section 212(h) from the Immigration Court and in his appeal to the BIA from his final order of removal. (*See* Doc. 6-2 at 26-27, 36-46.)

At the time the instant Petition became ripe, Jones still was subject to mandatory detention because his appeal from his order of removal still was pending with the BIA, and thus his order of removal had not yet become administratively final, and his removal period had not yet begun. *See* 8 U.S.C. § 1231(a)(1)(B). However, as noted above, the BIA dismissed Jones' appeal on October 27, 2010. Consequently, two scenarios now are possible. In the first scenario, if Jones chooses not to file a petition for review with the Third Circuit Court of Appeals, or if he files a petition for review and a motion for stay, and the motion is denied, then his order of removal will become administratively final as of October 27, 2010. *See id.* After an order of removal becomes final, an alien is detained under the post-final Order provisions of 8 U.S.C. § 1231(a).

In the second possible scenario, if Jones files a petition for review and a motion for a stay of removal, and the Third Circuit Court of Appeals grants his motion, then his order of removal will not become administratively final until the Third Circuit Court of Appeals enters a final order as to his petition, and therefore, he will continue to be subject to the mandatory detention provisions of 8 U.S.C. § 1226(c). *See* 8 U.S.C. § 1231(a)(1)(B). Under either scenario, as more fully set forth below, we must deny Jones' request for habeas relief.

In the former scenario, where Jones' order of removal becomes administratively final as of October 27, 2010, then, as of that date, his removal period would begin, and he would be subject to detention under the post-final order provisions of 8 U.S.C. § 1231(a). Title 8 U.S.C. § 1231(a) gives the Attorney General ninety (90) days to remove an alien from the United States after an order of removal. During this ninety (90) day period, detention is mandatory. 8 U.S.C. § 1231(a). At the end of the ninety (90) day period, ICE may continue to hold the alien, or it may grant supervised release. 8 U.S.C. §§ 1231(a)(3) & (6). The discretion to detain an alien under § 1231(a) is limited by the Fifth Amendment's Due Process clause. *See Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001).

In *Zadvydas,* the United States Supreme Court interpreted § 1231(a)(6) to include "an implicit limitation" on detention. *Id.* at 689. The Court determined that

"[§ 1231(a)(6)], read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* "[F]or the sake of uniform administration in the federal courts" the Court recognized six (6) months as a presumptively reasonable period of detention. *Id.* at 701. Further, the Court determined that, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

In the case at hand, in the first scenario outlined above where Jones' order of removal becomes final on October 27, 2010, then the ninety (90) day mandatory detention period would begin to run on that date and would not expire until January 25, 2011. Morever, the six (6) month presumptively reasonable period of removal would not expire until April 27, 2011. Thus, the instant request for habeas relief, to the extent that it now would be construed to be under the post-final order provisions, would be premature.

Under the second scenario set forth above where Jones continues to be subject to mandatory detention until the conclusion of judicial review by the Third Circuit Court of Appeals, we must consider the reasonableness of his continued detention. In *Alli v. Decker,* 644 F. Supp. 2d 535, 541 (M.D. Pa. 2009), this Court "construed § 1226(c) as

authorizing mandatory detention for the period of time reasonably necessary to promptly initiate and conclude removal proceedings." Further, we held that, "[i]f an alien detained pursuant to § 1226(c) makes a showing via a habeas petition that detention is no longer reasonable, the alien must be afforded a hearing before the habeas court at which the government bears the burden of justifying continued detention based on traditional bail factors such as the alien's risk of flight and potential danger to the community." *Id.* We then adopted a case-specific reasonableness standard for analyzing whether a habeas petitioner subject to the mandatory detention provisions of § 1226(c) should be afforded a bond hearing. *Id.* at 541-43. In adopting that standard, we noted some of the factors to be considered in applying the reasonableness standard, including whether the detention has continued beyond the average time necessary for completion of removal proceedings; the probable extent of future removal proceedings; the likelihood that removal proceedings actually will result in removal; and the conduct of both the alien and the government during the pendency of removal proceedings. *Id.* at 543-45.

While we observed that the factors we set forth in *Alli* were by no means exhaustive, *id.* at 543, a consideration of these factors in this case reveals that Jones' detention has not become unreasonable. As to the length of his detention, Jones asserts in his Petition that he is in a similar situation as a petitioner named Stephen Motto, whose petition for writ of habeas corpus was considered by another Member of this

Court earlier this year.  Specifically, Jones claims that he is subject to the same prolonged period of detention "without a clear explanation of why [he] is a danger to society or a flight risk."  (*See* Doc. 1 at 5.)

Preliminarily, we note that a petitioner subject to mandatory detention would not be entitled to a hearing at which the government would have the burden of establishing that he is a danger to society or flight risk until it has been determined that his detention is unreasonable.  Therefore, Jones would not be entitled to that proceeding unless we find in the context of the instant action that his detention is unreasonable.

Moreover, Jones' situation is not akin to Motto's.  In disposing of Motto's petition for writ of habeas corpus, Judge Muir observed that the twenty (20) month length of Motto's detention was "approaching a duration that is problematic", and therefore directed ICE to address his continued detention at a hearing that already was scheduled to occur in Immigration Court.  *See Motto v. Sabol*, 2010 WL 146315, at *4, Civil No. 4:CV-09-1675 (M.D. Pa. Jan. 11, 2010) (Muir, J.).   In the case at hand, while it is true that Jones has been in ICE custody since June 19, 2009, which is over sixteen (16) months as of the date of this Memorandum, we also observe that the length of time from the date on which he was taken into ICE custody (June 19, 2009) and the date on which he was ordered removed (March 8, 2010), a total of just over eight (8) months, does not appear to be an unreasonable amount of time in which to complete immigration

12

proceedings. Jones has continued to be subject to mandatory detention since March 8, 2010 because he has chosen to pursue an appeal from his order of removal, and thus his removal period has been delayed. Further, in light of the fact that the BIA now has disposed of Jones' appeal, removal proceedings either will conclude if he chooses not to pursue any additional relief, or, if he files a petition for review and is successful in securing a stay of his removal, his removal proceedings will conclude after the Third Circuit Court of Appeals disposes of his petition for review. In the event he chooses the latter option, there is no reason to believe that the petition for review will not be disposed of in an expeditious fashion.

As to the other factors we set forth in *Alli*, where the IJ, and now the BIA, both have rejected Jones' argument that his conviction in Delaware for terrorist threats does not amount to a "crime of violence" aggravated felony such that he is eligible to seek a waiver of inadmissibility pursuant to INA § 212(h), it appears likely that removal proceedings actually will result in removal. Also, there is no indication in the record that Jamaican officials will not cooperate in the effort to secure the travel documents that will be necessary to effect Jones' removal to that country. Finally, there is nothing in the record showing that either Jones or the government have engaged in conduct that has significantly prolonged the pendency of removal proceedings. Therefore, based on the foregoing considerations, we find that, in the event Jones continues to be subject to

mandatory detention, he has not established that his continued detention is unreasonable.

## III.    CONCLUSION

For the foregoing reasons, we will deny Jones' Petition for Writ of Habeas Corpus. An appropriate Order will enter.